In The United States District Court
Northern District of Illinois
Eastern Division

FILED
FEB 02 2018
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

United States of America,
vs.
Saul Tejeda

NO. 05 CR 194
Honorable Robert W. Gettleman

Jan. 29, 2018

## Petition To Confirm Record

I am respectfully petitioning this Court to confirm record regarding my Criminal History Score. On May 24, 2007, in Case No. 05 CR 194, I was sentenced in this Court. At my sentencing hearing I successfully challenged my Criminal History Score brought forth by the prosecutor and Probation Office. This Court ruled that the prior conviction, the government was attempting to use against me, was part of the instant offense and could not be used towards my Criminal History Score. The Court ruled that my Criminal History Score was 0 (zero). (See sentencing transcript attached.)

I am currently attempting to get a transfer to a lower security prison and this matter is preventing me from doing so. The Federal Bureau Of Prisons uses the

1

Pre Sentence Investigation Report to determine inmate classifications and Criminal History Score is part of said classification to determine what security level facilities inmates are to be housed in. In my case the Pre Sentence Investigation Report is incorrect concerning my Criminal History Score and therefore affecting my custody classification.

In Conclusion, a response from your Honor confirming the record, which states that I have a Criminal History Score of 0 (zero), would suffice to satisfy this petition.

Respectfully Submitted

*Saul Tejeda*

Saul Tejeda #21841-424
Federal Correctional Institution
P.O. Box 1000
Loretto, PA 15940

```
 4   under the guidelines about acceptance of responsibility even
 5   after trial, if you went to trial merely to preserve a legal
 6   claim of some sort, it can be considered.  And I think there are
 7   some extraordinary circumstances where some people go to trial
 8   and basically never contest liability.
 9            But that's not what happened here at all.  You were very
10   aggressive and very effective in the way you cross-examined
11   people on the issue of criminal liability in this case.  And
12   that's just totally inconsistent with acceptance.
13            That's how I feel about that issue, Mr. Neely.  You
14   know, I understand what you are saying, but it's just hard for me
15   to accept that.
16            I don't know if there is anything else anybody wants to
17   say.  I know you've made your record on that.  But that's how I
18   feel.  I want the record to be very clear about that.
19            There is some other issues though that I want to deal
20   with, and then I want to talk about computations under the
21   guidelines, and then I want to talk about 3553.
22            MR. NEELY:  Can we deal with criminal history?
23            THE COURT:  Yes, I definitely want to do that.  I just
24   want to make sure that's where we're at at this point.
25            MS. CANNON:  That's correct, Your Honor.
```

                                                                    21

```
 1            THE COURT:  I think that probably is where we're at.
 2            MR. NEELY:  Your Honor, our position is that Mr.
 3   Tejeda's criminal history should be zero.  He has several traffic
```

Mr.

4   violations, and then he has a conviction that occurred in 2002.
5   The government alleges that this conspiracy started in 2000.
6   Tejeda's conviction was part of the conspiracy; therefore, it
7   should not be used to enhance his sentence.
8           THE COURT: Now, which conviction is that?
9           MR. NEELY: I believe that's --
10          MS. CANNON: Judge, we're in agreement with that. I
11  don't think there is any dispute about that.
12          THE COURT: Is this the one on --
13          PROBATION OFFICER: Judge, it would be page 3 of the
14  supplemental report. There was a supplemental filed.
15          THE COURT: Right.
16          MR. NEELY: I didn't get that.
17          THE COURT: The one on January 30th, 2002?
18          MR. NEELY: Yes.
19          THE COURT: So that should not be counted?
20          MR. NEELY: Yes. So he should have zero criminal
21  history.
22          MS. CANNON: Judge, we do agree that, I think it was

for

23  the conviction for which Mr. Tejeda was arrested on May 1st of
24  2002, it was possession of a controlled substance conviction.
25          THE COURT: Wait. That's not the one that Mr. Freeze

1   just mentioned.
2           PROBATION OFFICER: No, Judge. The one you were just
3   speaking of was a 2002 conviction for possession of controlled
4   substance, page 3 of the supplemental report.
5           THE COURT: Right, case number 01 CF 2612?

```
 6              PROBATION OFFICER:  Yes, sir.
 7              MS. NOLLER:  Right.
 8              MS. CANNON:  I'm sorry, I must have the wrong arrest
 9   date.
10              THE COURT:  That's also on page 22 of the presentence
11   report.
12              MR. NEELY:  I think we're talking about the same
13   incident.
14              MS. NOLLER:  Yes.
15              THE COURT:  Yes.  Okay.  So let's talk about, the other
16   convictions then were zero points, correct?
17              MS. CANNON:  Judge, yes.  I'm trying to find -- I just
18   received Probation's supplemental report today, but --
19              PROBATION OFFICER:  The report went out in March, Judge.
20              THE COURT:  March 22nd.
21              I know the government argued, had an argument that
22   resulted in a 3 instead of a 2.  And the 2 was based on this
23   conviction, which you agree shouldn't be counted.  So I'm not
24   sure how you get there, Ms. Cannon.
25              MS. CANNON:  Right.  The government -- I don't think
```

                                                                    23

```
 1   this contains both of the convictions we addressed.
 2              Judge, the supplemental report, we had filed in our
 3   brief, I think that is what I'll refer to, Mr. Tejeda has a
 4   convictions from March 19th of 2003 for attempt to resisting of
 5   peace officer and driving on a suspended license.  They're
 6   separate convictions, but he was sentenced on the same date.
```

```
                                                             For
                                                             line,
 7   each of them --
 8          THE COURT:  Can you just refer me to the page and
 9   please?
10          MS. CANNON:  Sure.  Page 21 is the only conviction
11   discussed there, and page 20, lines 596 through 598.
12          THE COURT:  All right.
13          MS. CANNON:  As Your Honor can see, there are separate
14   arrests, but they were, Mr. Tejeda was convicted on the same                                                             day
15   and received the same sentence for both.
16          I have discussed this with probation.  I have done my
17   own research.  I understand from probation that they have done
18   their own research.  And it does not appear to us that there is
19   case law addressing this issue.  But the argument the                                                                      government
20   is making is that although driving with a suspended license and
21   attempted resisting of a peace officer require a sentence of 12
22   months supervision or probation to be imposed in order for one
23   criminal history point to count, in this case sentences of 11
24   months supervision were initially imposed, but then Mr. Tejeda
25   pled guilty to the violation that was filed by the state, and                                                              he
```

                                                                24

```
 1   was not -- his probation was not then terminated until April                                                             22nd
 2   of 2004.  That date is 12 months after the sentence was                                                                  imposed.
 3          Now, if you look at 4A1.2(k)(1) in the guidelines, it
 4   talks about prior revocations of probation.  It talks about the
 5   fact that any additional terms of imprisonment or probation or
```

```
 6   whatever that are imposed being added to the original term in
 7   order to come up with the number of points that are attributed
 8   to --
 9            THE COURT:  The original term of imprisonment?
10            MS. CANNON:  Or it says "revocation of probation,"
11   4A1.2(k)(1), "Revocations of probation."
12            THE COURT:  I'm reading it.  It says you add that, you
13   add the original term of imprisonment to any term of imprisonment
14   imposed upon revocation, not supervision, but imprisonment.
15            MS. CANNON:  Judge, let's see here --
16            THE COURT:  Are we reading from the same hymnal here?
17            MS. CANNON:  4A1.2(k)(2)(b), revocation of probation.
18            THE COURT:  You said (k)(1) before.
19            MS. CANNON:  Okay, pardon me.  "May affect the time
20   period under which certain sentences are counted as provided in
21   4A1.2(d)(2) and (e).  For purpose of determining the applicable
22   time period, use the following."  And then if you skip down to
23   (3)(i), you're directed to add the date of the original sentence
24   to the revocation term.
25            THE COURT:  But he wasn't sentenced to probation.  He
```

25

```
 1   was sentenced to supervision.
 2            MS. CANNON:  Well, right, Judge.  But there is case law,
 3   abundant case law, and we can certainly find a cite if Your Honor
 4   would like, stating that supervision is the functional equivalent
 5   of probation for guidelines purposes.
```

```
          6            MR. NEELY:  It seems like if Congress meant that and
          7   intended that, it would have said that.
          8            THE COURT:  What's your position, Mr. Freeze?
          9            PROBATION OFFICER:  Judge, my position, the position
of
         10   the office, the Probation Office, that that's dealing with
         11   someone who is in prison, perhaps they're given supervision,
         12   probation, and they are revoked, and sentenced subsequently to
         13   another term of imprisonment.
         14            In this case you have a supervision sentence to begin
         15   with and the actual sentence imposed upon revocation is simply
by
         16   way of fine.  There isn't even a subsequent supervision
sentence
         17   imposed.
         18            So even under that theory, there is nothing to add to
         19   the 11 months except a fine.  Granted, he was in violation for
         20   the period of 12 months.  That's our position, of the Probation
         21   Office, Judge.
         22            THE COURT:  All right.
         23            MS. CANNON:  Judge, I'm sorry, let me set up the issue
a
         24   little better.  First of all, I'm directing the Court to the
         25   wrong suspended license conviction.  It's the one on page 24.
```

                                                                        26


```
          1   Mr. Tejeda has several, but it's the one on page 24.  That's
the
          2   one he pled guilty to on March 19th of '03.  He was sentenced
to
          3   11 months supervision.  On March 17th of '04, his supervision
was
          4   revoked.  And then one month later, his supervision was
```

```
         5   terminated.
         6           Respectfully, I don't think the issue was was it
         7   supervision or probation.  I think the issue is was an additional
         8   sentence imposed.  And while the court records does not
         9   reflect -- I think probation can correct me if I'm wrong, but in
        10   my discussions with probation, my understanding of their concern
        11   was that because when his supervision was revoked, when he pled
        12   guilty to the violation, there is not a specific statement
        13   imposing an additional sentence of one month that they're
        14   unwilling to assign the additional criminal history point for
        15   those 12 month terms.
        16           I see Your Honor shaking his head, but --
        17           THE COURT:  I just think this whole thing is so obtuse.
        18           MS. CANNON:  It is obtuse.  And as I said, I could not
        19   find any case law on this.  Mr. Freeze could not find any case
        20   law on this.  At the end of the day it's a distinction without a
        21   difference, because if Your Honor finds the defendant to be at a
        22   level 38, because for guidelines purposes whether he's in
        23   criminal history category I or III, his offense level is so deep
        24   into the guidelines that it does not make a difference.
        25           THE COURT:  All right.  You know, I tried to follow your
```

27

```
         1   original argument in your brief, and I was having trouble.  I'm
         2   having even more trouble now.
```

3          I'm going to adopt the Probation Office's approach.
4   Let's move on, because we have some other issues that I would
5   like to deal with. I think that the Probation Office has scored
6   this as basically a zero, right?
7          PROBATION OFFICER: Judge, right. If the Court rules
8   the other offense doesn't count, and it's zero points.
9          THE COURT: The other offense by agreement doesn't
10  count, because it's definitely part of the conspiracy.
11         PROBATION OFFICER: Correct. Criminal history category
12  would be a I.
13         THE COURT: Okay. So let's go with that.
14         I would like both parties' guideline calculations based
15  upon everything we've discussed, taking the government's 150
16  kilograms and with the four-point enhancement for
17  organizer/leader.
18         I'm going to make that finding right now, because I
19  understand what you are saying, this isn't like some cases I've
20  had where you have a gang leader with minions following and a
21  formal process and a formal organization, almost a paramilitary
22  organization like we've seen in some other gangs. This gang may
23  have that organization for all I know, but Mr. Tejeda didn't
24  occupy that position.
25         But the enhancement itself is based on relative

                                                              28

1   culpability. And relatively speaking, I heard more than enough
2   evidence to convince me that he was a leader of the people that
3   he was dealing with, at least some of them, and that there were

```
 1            THE COURT:  Anything you want to say, Mr. Freeze, that
 2   you haven't already said?
 3            PROBATION OFFICER:  Judge, nothing.
 4            THE COURT:  Are we going to get an amended or an
 5   addendum to the PSR reflecting the new criminal history
 6   calculation?
 7            PROBATION OFFICER:  If Your Honor so orders, otherwise
 8   it's in the statement of corrections.
 9            THE COURT:  Well, yes, I think so, because that should
10   be accurately scored for future purposes.
11            All right.  Mr. Tejeda, is there anything you want to
12   say to me, sir?
13            THE DEFENDANT:  Yeah.  I just want to say I'm sorry to
14   my family for putting them through this.  I just want to say I
15   love them, too.  And I want to tell this Court that I'm sorry,
16   too, and the community, I'm sorry, too.  You know, I wish I could
17   take what I did back, but I can't.  I just hope you guys accept
18   my apology.  That's it, Your Honor.  Thank you.
19            THE COURT:  All right.  Thank you, Mr. Tejeda.
20            All right.  I guess to the extent the record isn't
21   clear, I believe that there is enough to establish by a
22   preponderance at least 150 kilograms of cocaine.  So I think the
23   government's scoring of the criminal history -- I'm sorry -- the
24   offense level here is correct, and it caps out at 43.
25            With a criminal history level of I or VI, it doesn't
```

Saul Tejeda #21841
Federal Correctional Institution
P.O. Box 1000
Loretto, PA 15940



RECEIVED
2018 FEB -2 AM 8:29


02/02/2018-34

⇔21841-424⇔
Pro Se Filing Desk
219 S Dearborn ST
Office Of The Clerk
Chicago, IL 60604
United States